**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**C.H. BUTCHER, Sr., et al, Defendants.**

**No. CIV–3–84–1020.**

United States District Court, E.D. Tennessee, N.D.

Oct. 30, 1986.

G.W. Morton, Jr., Judy Pinkston McCarthy, Knoxville, Tenn., Dan Persinger, Deputy General Counsel, Mark Rosen, Federal Deposit Ins. Corp., Washington, D.C., for Federal Deposit Ins. Corp.

Donald F. Paine, D. Michael Swiney, Knoxville, Tenn., for G.W. Ridenour, Jr. and Marie Wilde.

William D. Vines, III, Dennis L. Babb, Butler, Vines, Babb & Threadgill, Knoxville, Tenn., for Randall L. Attkisson.

Charles J. Gearhiser, Chattanooga, Tenn., for all defendants.

Archie R. Carpenter, Knoxville, Tenn., for Paul E. Bostic, Jr.

Harold B. Stone, Knoxville, Tenn., for Ben S. Adams, Phillip Ray Duncan, Paul Martin, Patricia Postma and Charles Rutherford.

William H. Horton, Charles J. Gearhiser, Chattanooga, Tenn., for J. Vic Ford, James E. Lawson and Lynn E. Meredith.

Robert H. Watson, Jr., Knoxville, Tenn., for Robert L. Woodson, Jr., Joseph Holbrook and W.T. Gallaher, Sr.

Lawrence E. Levine, Levine, Brewer & Krause, Nashville, Tenn., for William S. Brown.

Michael J. Hickie, Weller, Miller, Carrier, Miller & Hickie, Johnson City, Tenn., for Fred W. Hatmaker.

Joe Nicholson, Maryville, Tenn., for Emmett Foster.

Dean Hill Rivkin, Knoxville, Tenn., for The Knoxville News Sentinel, intervening petitioner.

Leslie Shields, David E. Rodgers, Knoxville, Tenn., for C.H. Butcher, Sr.

Alf Adams, Jr., Nashville, Tenn., Stone & Hinds, Knoxville, Tenn., for Ben S. Adams.

Jack Draper, Knoxville, Tenn., for Roger Ridenour.

Gene A. Stanley, Jr., Knoxville, Tenn., for Robert Wrather.

## MEMORANDUM AND ORDERS

ROBERT P. MURRIAN, United States Magistrate.

This matter came before the undersigned for a hearing on October 23, 1986, upon the oral motion of the defendants for an order to compel designation of witnesses who can answer questions about "matters known or reasonably available" to the FDIC. Rules 30(b)(6) and 37(a)(2), Fed.R.Civ.P.

The discussion is limited to the testimony of three witnesses, John Reid McKinney, Tammy Lynn Baker Childs and Michael Ray Hall, who were designated by the FDIC (pursuant to notice given by defendants) to testify regarding the following questions:

\* \* \* \* \* \*

6. The FDIC's knowledge with respect to the borrower or borrowers, including the principals of any corporations or other entities named, the trustees and beneficiaries of any loans made to a nominee, the person or persons or entity or entities which received the benefit of the pro-

ceeds of the loan and the guarantors or other obligors on the loan.

7. The FDIC's knowledge with respect to disposition of the loan proceeds including specifically tracing of loan proceeds.

\* \* \* \* \* \*

9. The FDIC's knowledge with respect to criminal acts connected with each loan;

10. The FDIC's knowledge with respect to possible negligence, malpractice or other misconduct by an accountant or accounting firm with respect to each claimed loss;

11. The FDIC's knowledge with respect to negligence, malpractice or other misconduct by a lawyer or law firm regarding each claimed loss;

12. The history of the loan, including any shifting of the loan from bank to bank, the circumstances surrounding the making of the loan at the originating bank if the loan is a participation, the history of any loan which was paid off by the proceeds of the claimed loss and all other circumstances surrounding the claimed loss prior to its having been designated as a claimed loss target loan by the FDIC.

\* \* \* \* \* \*

The claimed loan losses are set forth on schedules attached to defendants' Amended Notice of Depositions Regarding Claimed Loan Losses. Times and dates are given when each loss is to be discussed.

There is no doubt the questions set out above involve matters at the very heart of this lawsuit. The FDIC is suing defendants for $40,000,000, alleging that they were negligent in carrying out their duties as officers and directors of the City and County Bank of Anderson County, Tennessee (CCA). Each is sued for breach of statutory, contractual and common law duties. The FDIC has identified 62 claimed losses for which it seeks to hold these defendants liable. The answers to the questions set out above are not peripheral matters. Liability, if any, in this lawsuit will be decided with regard to facts and circumstances surrounding these 62 claimed losses. The defendants are entitled to answers made "... directly and without evasion, in accordance with the information the deposed *party* possesses, after due inquiry." *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 66 (D.P.R.1981) (emphasis added). The party in question here is, of course, the FDIC, and not the individuals it chose to designate to speak for it.

The defendants insist that the witnesses, McKinney, Childs and Hall, were woefully unprepared for the depositions which began October 14, 1986. Defendants claim that all the witnesses had done was to review the investigative file for each claimed loss and came to the deposition ready to testify only about matters known to the "investigative unit" of the FDIC, and beyond that, they were not prepared to testify. The defendants claim that the witnesses were presented at the depositions for the purpose of leading defendants down a "paper trail" and that the FDIC does not even intend to call them as witnesses at trial. The FDIC has not disputed the defendants' assertion that McKinney, Childs and Hall are not trial witnesses. In fact, counsel for FDIC has announced on the record that none of the three are expected to be trial witnesses. Transcript of Discovery Conference, October 15, 1986, p. 11. The defendants also complain that the witnesses were not prepared to testify what the FDIC knows with regard to these same loans as they may have appeared on the books and in the records of other "Butcher banks." Defendants claim that the FDIC gave these witnesses a discrete amount of information, told them to familiarize themselves with it, and then presented them at the deposition. In this manner, it is argued, the FDIC is effectively controlling the release of information which it has about this lawsuit.

The FDIC denies all this and claims that it spent over 1650 man-hours between mid-September and October 21, 1986, preparing for these 30(b)(6) depositions; that this did not include man-hours expended by its legal department; and that it has produced

some 34,000 documents in response to defendants' requests. James David Harris, Section Chief of the FDIC's Investigative Unit, testified at the hearing. Among other things, he said that the persons designated to testify were told to review the FDIC's "work papers" (which relate to tracing the respective loan losses) but that they could look at other documents if they wished. The witnesses were told not to review the six-part memoranda which may have been generated for each loan loss.

I discussed the six-part memoranda in my Memorandum and Order filed September 15, 1986, in which defendants' motion to compel production of them was denied [Doc. 441]. But, it was made clear that FDIC employees who have knowledge concerning the relevant facts set out in the six-part memoranda can be deposed. And, of course, Rule 30(b)(6) expressly allows defendants to take other depositions of corporate employees even though certain persons have been designated to testify for the corporation. The six-part memoranda contain a lot of information which would be useful to any Rule 30(b)(6) witness who was trying to answer question nos. 6, 7, 9, 10, 11 and 12. The only reason that I can imagine that witnesses McKinney, Childs and Hall were not prepared for the depositions by allowing them to read the six-part memoranda is that the FDIC does not want to risk a Rule 612(2), F.R.Evid., motion to produce the six-part memoranda if it had been read prior to the deposition.[1]

There is not a lot of case authority on the subject being discussed here. One thing is clear, however. One of the purposes of Rule 30(b)(6) is to curb any temptation a corporation might have to shunt a discovering party from "pillar to post" by presenting deponents who each disclaims knowledge of facts clearly known to someone in the organization. *See Cates v. LTV Aerospace Corporation*, 480 F.2d 620, 623 (5th Cir.1973). Moreover, a corporation like the FDIC "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 93 F.R.D. at 67.

I have read the deposition of Michael Ray Hall whom the FDIC presented as a Rule 30(b)(6) witness to testify regarding the West Knoxville Investment Company, Inc. "claimed loss." The FDIC also filed under seal its "Confidential Memorandum" (aka "Six-Part Memorandum") dated October 18, 1983, which bears the name of Vincent M. Filippini, "FDIC Examiner" as compiler. The six-part memorandum was submitted for *in camera* review.

This is a complex case and many of the complexities of the banking world and its jargon are difficult for the undersigned to understand. But, having read the 196–page deposition and the related six-part memorandum, it appears to me that a lot of time and money was wasted at this deposition. The FDIC presented for examination a "liquidation assistant" hired by the FDIC in January 1985—just six months out of college. He was given three weeks to prepare for the deposition. Transcript of Deposition, 19, 33. He never participated in putting together any of the "work papers"[2] and six-part memoranda for CCA. Transcript Deposition, 31. He prepared them for United American Bank of Knoxville but not CCA. Repeatedly, counsel for the defendants were advised by FDIC counsel that Hall spoke only for the investigative unit of FDIC and that they would have to ask somebody else if they wanted information known to FDIC employees outside the investigative unit. *E.g.*, Transcript of Deposition, 60, 96. As indicated earlier,

---

1. Rule 612(2) is not self-executing. The Court retains a great deal of discretion regarding what, if anything, must be disclosed.

2. He defined "work papers" as FDIC's name for the work product which is compiled in preparation of the six-part memoranda for their attorneys. Transcript of Deposition, 40.

Rule 30(b)(6) was designed to prevent this type of problem.

Mr. Hall was asked several questions which are answered in the six-part memorandum but which he could not answer. For example, he did not know when West Knox Investment Company, Inc. (WKIC) was formed, whether there were principals or owners other than David Crabtree or what the amount of the claimed loss was. All of these answers are in the six-part memorandum.

The biggest problem with regard to this deposition and one which I reluctantly conclude amounts to no less than intransigent behavior on the part of the FDIC is that the deposition had little, if anything, to do with what the FDIC believes the defendants did wrong. Many, many pages of testimony were spent discussing a loan which originated in August 1981. As best I can tell from the six-part memorandum concerning WKIC, FDIC's claims against the defendants do not involve that loan at all, but rather a loan which originated April 7, 1982. Transcript of Deposition, 51. Mr. Hall said that there were three loans which were claimed loan losses by the FDIC. *Id.* 51–52. In fact, based on what is in the six-part memorandum, it is only the April 7, 1982, loan for which FDIC seeks to hold these directors liable.

The FDIC's strategy in connection with the deposition of Mr. Hall was to have him examine the work papers, CCA records and credit files in connection with the WKIC claimed loss. *Id.* 33–34. He was then presented to counsel for defendants as a 30(b)(6) witness for them to try and guess what information they should ask about with regard to the claimed losses. I realize

that the FDIC does not have to prepare the other side's case but to engage in a game of "pin the tail on the donkey" with defendants at this stage of the proceedings is uncalled for.[3] Counsel for the FDIC apparently sat and listened to numerous questions about a loan that is not even pertinent to the claimed losses in this case.

There is no question but what the six-part memoranda are laced with opinions of FDIC employees and that valid attorney-client and work product objections can be made regarding their disclosure. But, equally clearly, the underlying *facts* known to those who generated the work product or attorney-client materials are not privileged information. Rule 26(b)(3), Fed.R. Civ.P. ("work product" is documents or tangible things); *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 685–686 (1981). The FDIC has resisted explicit disclosure of exactly what its contentions are with respect to the alleged misfeasance or non-feasance of each of the defendants, *see* Rule 33(b), Fed.R.Civ.P., and I have been somewhat deferential to this position pending further discovery. Memorandum and Order filed June 26, 1986 [Doc. 300]. But, after reading Mr. Hall's deposition, I am convinced that it is time to be less deferential.

I noted in the June 26, 1986, Memorandum and Order that "the FDIC has also agreed to provide defendants with its contentions regarding why *a loan* should not have been made and the current balance owing on it by September 15, 1986." (Emphasis added). If this had been done, then I believe defense counsel would have "zeroed in" on the April 7, 1982, loan and would have had a chance to examine the

3. "Pin the tail on the donkey" is a children's game in which the contestant is blindfolded, given a replica of a donkey's tail, spun around a few times and turned loose to try and pin the replica of the tail on the appropriate part of the anatomy of a picture of a donkey. Defense counsel will have about as much chance as the contestant at succeeding at the goal unless defense counsel knows which loan or loans are involved and why, in general terms, the FDIC claims that there was misfeasance or non-feasance. The FDIC bases its claims against many

defendants on their alleged inattention to duty and abandonment of their responsibilities. Memorandum and Order filed January 26, 1986, pp. 2–3 [Doc. 300]. If this is true, then many of the defendants do not know what conduct of bank officers or other directors it is that FDIC claims they did not pay proper attention to. They are entitled to discover that information. FDIC simply cannot take the position during discovery that "these defendants know what they did wrong and so why should we tell them what we think they did."

witness about the facts surrounding FDIC's contention regarding why it should not have been made. As it was, the examining attorneys remained in the dark about just which WKIC loan(s) the FDIC claimed a loss upon and what it was that made that loan a subject of FDIC's claim for relief in this action.

I do not know if the FDIC's position on why the defendants are liable for the WKIC loss is different now than what is stated in the six-part memorandum. That does not matter. What does matter is that all parties should be able to engage in meaningful discovery. FDIC's strategy in presenting these Rule 30(b)(6) witnesses is improper. FDIC's counsel has flatly stated on the record that Rule 30(b)(6) does not require it to do any "new work" in preparing its Rule 30(b)(6) deponents (transcript of October 15, 1986, Discovery Conference, 5); that FDIC does not have to tell defendants the evidence it will marshal for its contentions, *id.* at 9; and that McKinney, Childs and Hall do not speak for the entire FDIC but only the "investigative unit."

 As indicated earlier, FDIC does have a duty to *prepare* its 30(b)(6) witnesses to speak *for the corporation* on all discoverable information and to give full, complete and unevasive answers. *Mitsui & Co.*, 93 F.R.D. at 66.

I have read the depositions of Messrs. Hall and McKinney and a portion of the deposition of Ms. Childs, and I have compared their testimony with what FDIC "contends" and "knows" as set forth in the related six-part memoranda. There is a wealth of factual information in the six-part memoranda. The information is succinctly stated, it is not privileged (*i.e.*, the facts contained therein are not privileged even though the documents themselves are), and it appears to get right to the heart of the factual issues involved.

McKinney is a liquidating assistant with FDIC who was told to begin preparing to testify about the Tri-State Mining claimed loss about a month before his deposition was taken. He never worked on any of the actual investigation of the loss until that time. There is a related six-part memoranda which lists Leland J. Chinn as the cognizant examiner.

Childs is also a liquidating assistant with FDIC who was designated as a 30(b)(6) witness and given a month to prepare for the deposition. She was designated to testify about the Metro Aviation, Inc., claimed loss. She had never investigated the loss until that time. She came to the deposition and had not been told which loan the loss was being claimed for by the FDIC. Deposition Transcript, 42–43.

Neither McKinney nor Childs had read the two related six-part memoranda before their depositions. In fact, they were told not to read the memoranda by their supervisors. The examiners whose names appear on those six-part memoranda obviously put in a lot of time and effort in compiling them. I simply do not understand why the FDIC is trying to "reinvent the wheel" by having examiners other than the ones who have already compiled the six-part memoranda look over the same work papers and related documents and testify about them. This seems like a gross duplication of effort. It would seem to me that the simplest, most economical thing to do would be to provide the defendants with the factual statements in the six-part memoranda and offer the examiner whose name appears on the six-part memorandum for discovery if there are questions which need to be asked. The FDIC apparently does not understand that those examiners can be deposed about the factual statements contained in those six-part memoranda.

The Federal Rules of Civil Procedure allow notice pleading. But, discovery is available to avoid "trial by ambush." The time has come for the FDIC to get very specific about the loans for which it is claiming damages, about its contentions regarding why defendants are liable for those damages and about the amount of loss claimed for each loan.

In order to try and avoid repetition of the circumstances described above, the following order will enter.

IT IS ORDERED THAT

(1) The FDIC redesignate Rule 30(b)(6) witnesses to answer questions regarding the 13 areas described in defendants' Amended Notice of Depositions. Such witnesses shall be prepared to testify *for the entire corporation* (and not just a unit or units thereof) on each subject for which he or she is designated. Several witnesses may be designated to answer one or more of the 13 areas of inquiry, but a witness designated to speak to area number 6, for example, must be prepared to speak for the entire corporation on all discoverable matters known or reasonably available to FDIC with regard to area number 6. The FDIC shall designate such persons in good faith and in accordance with the guidelines set out in this Memorandum. The witnesses shall be prepared to answer questions fully, unevasively and completely about discoverable matters in connection with the subject or subjects for which they are designated. It is the FDIC's responsibility to prepare the witnesses to testify properly. Further, the FDIC shall provide in writing to adverse counsel the following information about *each* of the 62 claimed losses at least seven days before a deposition is to begin:

(A) the specific loan or loans (identified by loan number, date of origination or in some other specific manner) for which FDIC claims one or more defendants are liable;

(B) the FDIC's general contentions regarding why the facts and circumstances surrounding the making or handling of the loan renders one or more of the defendants liable; and

(C) the current balance owing on the loan or loans.[4]

(2) The contentions set forth in Item (1)(B) shall be treated as answers to contention-type interrogatories under Rule 33(b), Fed.R.Civ.P., and shall be supplemented, if necessary, pursuant to Rule 26(e), Fed.R. Civ.P., if the FDIC's position changes at any time.

(3) The Clerk shall take charge of and store under seal the following documents which were submitted for *in camera* inspection:

(A) Discovery Deposition of Michael Ray Hall dated October 14, 1986;

(B) Discovery Deposition of John Reid McKinney dated October 16, 1986;

(C) Discovery Deposition of Tammy Lynn Baker Childs dated October 15, 1986;

(D) Transcript of Proceedings (10 pages) dated October 17, 1986; and

(E) Transcript of Proceedings, October 15, 1986, Discovery Conference.

A docket number or docket numbers shall be assigned to these documents and the Clerk shall store them under seal pending further orders of the undersigned or other Magistrate of this Court or any Article III judge of this Court or any court to which the case may be appealed.[5]

The FDIC has indicated informally that its 30(b)(6) witnesses will not be allowed to answer questions nos. 10 and 11. If that is its position, it must obtain a protective order before the deposition is taken in order to prevent inquiry into such matters. *See First Tennessee Bank v. FDIC*, 108 F.R.D. 640 (E.D.Tenn.1985) (counsel may not instruct witness not to answer a question at a deposition unless it is to protect privileged information or unless counsel then

---

**4.** These three requirements may be met by the following type of written statement (the information set forth in Items 2, 3, and 4 is fictitious):
 1. CLAIMED LOSS: TRI–STATE MINING CO., INC.
 2. LOAN OR LOANS IN QUESTION: No. 7436–01, originated 5/3/81
 3. GENERAL CONTENTIONS: Defendants Smith and Jones conspired to make the loan knowing that the loans were insufficiently collateralized. Additionally, all defendants

are liable because they failed to (1) enforce existing loan policies and procedures, (2) failed to pay attention to bank regulators, and (3) failed to supervise lending officers of CCA.
 4. CURRENT BALANCE: $516,974.73 as of October 31, 1986.

**5.** The three six-part memoranda discussed herein have already been filed under seal [Doc. 483] and are returned herewith to the Clerk for safekeeping.

adjourns the deposition and seeks a protective order from the Court).

It is regrettable that counsel for the parties and/or the parties themselves have so much difficulty cooperating with discovery and that the Court is often called upon to spell out detailed rights and responsibilities. Discovery is supposed to proceed with minimal involvement of the Court. It is not a "court's function to drag a party kicking and screaming through discovery." *Carlucci v. Piper Aircraft,* 102 F.R.D. 472, 489 (S.D.Fla.1984), *aff'd in part, rev'd in part on other grounds,* 775 F.2d 1440 (11th Cir.1985).[6]

---

**6.** Any objection hereto must be made in accord- ance with Rule 72(a), Fed.R.Civ.P.