MILL–RUN TOURS, INC., Plaintiff,

v.

Adnan M. KHASHOGGI, Mohamad Khashoggi, Omar Khashoggi, Nael El–Assad, Hussein Khashoggi, Nabila Khashoggi, Khalid Khashoggi, Mary Hart and Melissa Prophet, Defendants.

No. 88 Civ. 1944 (KTD).

United States District Court,
S.D. New York.

Feb. 17, 1989.

Frederic C. Weiss, Brooklyn, N.Y., for plaintiff.

Anthony M. Phillips, Richard Mancino, Scott Greenspun, Willkie, Farr & Gallagher, New York City, for defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate.

The plaintiff in this action, Mill–Run Tours, Inc. ("Mill–Run") is a travel agency based in New York City. The defendants are Adnan Khashoggi ("Khashoggi"), reputed to have been the wealthiest man in the world (Complaint at para. 34); his children Mohamad, Omar, Hussein, Nabila, and Khalid; his brother-in-law Nael El–Assad (referred to, along with the children, as the "Khashoggi Relatives"); and Mary Hart and Melissa Prophet, acquaintances of the Khashoggis. The complaint alleges that the defendants failed to pay for airline tickets worth in excess of a half million dollars which they had ordered from Mill–Run to transport themselves and others to events organized by the Khashoggis. There are currently three discovery motions pending. First, Khashoggi and the Khashoggi Relatives have moved for a protective order directing that their depositions be taken by written questions or, in the alternative, that oral depositions be conducted where these defendants reside. Second, Mill–Run has moved for a protective order relieving it of the obligation of producing its president, Issam Sawaya, for deposition until the examinations of Khashoggi and the Khashoggi Relatives have taken place. Third, the defendants have moved for sanctions, including dismissal of the complaint, because Sawaya failed to appear in response to a notice of deposition.

*Background*

A chronology of the discovery in this case is pertinent to the motions under consideration. Following the filing of the complaint, plaintiff's counsel issued a notice on May 24, 1988, setting the deposition of Adnan Khashoggi to be held in counsel's offices in Brooklyn, New York on July 28, 1988. Affidavit of Frederic C. Weiss dated January 3, 1989, Ex. A. Khashoggi's deposition did not go forward at that time, but was adjourned without date.

After the defendants had moved to dismiss the complaint and the plaintiff had cross-moved for summary judgment, plaintiff's counsel renewed his demand for Khashoggi's deposition by serving a notice on November 23, 1988. Weiss Aff. (1/3/89) at para. 2 & Ex. B. At the same time, counsel noticed the depositions of several of the Khashoggi Relatives. *Id.* By coincidence, the defendants served a notice the same day requiring Mill–Run to appear for a deposition by its president, Issam Sawaya. *Id.* at para. 3; Affidavit of Richard Mancino dated January 13, 1989 at para. 3 & Ex. A.

Defendants' counsel then sent plaintiff's counsel a letter dated December 7, 1988, objecting to holding the depositions of Khashoggi and the Khashoggi Relatives in New York. Weiss Aff. (1/3/89) at para. 4 & Ex. C. Defendants' counsel represented

that none of these defendants reside in New York or have plans to be here on the dates set for the depositions, and he suggested discussing alternative sites for the depositions. *Id.* Upon receipt of this letter, plaintiff's counsel telephoned defendants' counsel and maintained that New York would be the proper location for the noticed depositions. Weiss Aff. (1/3/89) at para. 5. When defendants' counsel indicated that his position was firm, plaintiff's counsel stated that Sawaya would not be produced for his deposition. *Id.* Plaintiff's counsel then sent a letter to defendants' counsel dated December 12, 1988, suggesting that the defendants move for a protective order and arguing that the plaintiff had priority in the order of depositions, having served its notices first. *Id.* at para. 6 & Ex. D; Mancino Aff. (1/13/89) at para. 5.

As the date scheduled for Khashoggi's deposition approached, defendants' counsel confirmed that the witness would not appear. *Id.* at para. 10, Ex. D. Accordingly, plaintiff's counsel did not engage a court reporter for the depositions he had noticed. *Id.* at para. 11. Defendants' counsel then moved for a protective order prior to the date scheduled for the Khashoggi deposition.

On the morning of January 3, 1989, when Sawaya was scheduled to appear for deposition, plaintiff's counsel confirmed again by telephone that this witness would not be produced. *Id.* at para. 12. Defendants' counsel then commenced the deposition and noted on the record the witness' failure to appear. Later that day, plaintiff's counsel served his motion for a protective order seeking to halt any deposition of Mill–Run until the depositions of the Khashoggis had been completed. Affidavit of Service attached to Notice of Motion. Thereafter, the defendants moved to dismiss the complaint because of Mill–Run's failure to produce Sawaya on the date set forth in the notice of deposition.

After the parties' discovery motions were submitted, defendants' counsel advised the Court of a modification to defendants' motion for a protective order. Because it had been determined that Khalid Khashoggi lives in New Jersey and is employed in New York, the objection to holding his deposition in New York was withdrawn. Letter of Anthony F. Phillips dated January 17, 1989.

*Discussion*

### A. *Mode of Depositions*

■ The moving defendants' first request—that their depositions be taken by written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure—is without merit. In certain limited circumstances, depositions by written questions are appropriate. For example, where the issues to be addressed by the witness are narrow and straightforward and the hardships of taking an oral deposition would be substantial, written questions may be an adequate substitute, at least in the first instance. *See Winbourne v. Eastern Air Lines, Inc.,* 632 F.2d 219, 226 (2d Cir.1980).

But there are several reasons why oral depositions should not be routinely replaced by written questions. *See* 8 C. Wright & A. Miller, *Federal Practice & Procedure* §§ 2039, 2131. First, the interrogatory format does not permit the probing follow-up questions necessary in all but the simplest litigation. Second, without oral deposition, counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of trial. *See National Life Insurance Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595, 599–600 n. 5 (3d Cir.1980). Finally, written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes. *See Alliance to End Repression v. Rochford,* 75 F.R.D. 428, 429 (N.D.Ill.1976).

In this case, oral depositions of the defendants are indispensable. The plaintiff needs to explore not only the defendants' own use of the airline tickets purchased, but also their relationship to other persons for whom tickets were obtained and their purported agency relationship to the individual who had direct contact with Mill–Run. "Only through oral depositions can counsel explore all of the nuances of [defendants'] actions which are relevant to

this litigation." *Haymes v. Smith,* 73 F.R. D. 572, 575 (W.D.N.Y.1976); *see also Financial General Bankshares, Inc. v. Lance,* 80 F.R.D. 22, 23 (D.D.C.1978). Accordingly, defendants' request that their depositions be taken by written questions is denied.

### B. *Site of Depositions*

The defendants next argue that if they must submit to oral depositions, the examinations should take place where they reside. They contend that it would be inconvenient for them to travel to New York for depositions and that they had no plans to be here on the dates set forth in the notices.[1] The defendants rely in large measure on the rule that, although a plaintiff must generally submit to deposition in the district where he has commenced litigation, a defendant is usually entitled to insist that his deposition take place where he resides.

The caselaw does establish a general presumption that a defendant's deposition will be held in the district of his residence. *See, e.g., Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich.1987); *Pinkham v. Paul,* 91 F.R.D. 613, 614–15 (D.Me.1981); *General Leasing Co. v. Lawrence Photo–Graphic Supply, Inc.,* 84 F.R.D. 130, 131 (W.D. Mo.1979). However, this rule is often honored in the breach. *See, e.g., Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1365 (7th Cir.1985); *South Seas Catamaran, Inc. v. M/V "LEEWAY,"* 120 F.R.D. 17, 21 n. 5 (D.N.J.1988); *Haymes v. Smith,* 73 F.R.D. at 575; *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 96–97 (S.D.N.Y.1968).

■ The initial issue to be addressed, then, is the weight to be accorded this presumption. Because courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other. "Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other

hand, are not before the court by choice." *Farquhar v. Shelden,* 116 F.R.D. at 72. Where this factual premise is attenuated, the presumption is weakest. *See South Seas Catamaran, Inc. v. M/V "LEEWAY,"* 120 F.R.D. at 21 (consideration given to whether plaintiff is *"de facto* defendant"); *Pinkham v. Paul,* 91 F.R.D. at 614–15 (defendant asserting non-compulsory counterclaim may be considered as plaintiff for site of deposition).

■ This is such a case. Although the plaintiff initiated the litigation in this district, it had little choice. The defendants apparently reside in various countries, so that no other single forum would have been more convenient for all. Indeed, serious questions of personal jurisdiction would be created for those defendants not resident in the alternative forum. Moreover, the transactions at issue took place here, rendering New York the only focal point for all of the parties. Thus, the standard presumption has little force in this case, and the other factors influencing the designation of a deposition site must now be addressed.

#### 1. *Cost*

■ Wherever the depositions are held in this case, the costs will be substantial. It will be necessary either to transport counsel to the various places where the defendants reside or to transport each of the defendants here. Although the defendants appear better able to absorb the costs related to these depositions, *see Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. at 97 (defendants better able to bear costs of travel; required to attend deposition in forum district), counsel for both sides suggested at the hearing on these motions that these costs be awarded to the prevailing party at the conclusion of the litigation. *See also* Weiss Aff. (1/13/89) at para. 12. Thus, the cost of the depositions is not a significant factor favoring either party.

---

**1.** Affidavit of Richard Mancino dated December 16, 1988, Ex. B. This carefully worded representation seems to suggest that the defendants

might have made arrangements to be in New York at some other time.

## 2. Convenience

The general factor of "convenience" incorporates a number of considerations. Although less important than any hardship on the parties, the convenience of counsel should be taken into account. *See Farquhar v. Shelden,* 116 F.R.D. at 72. In this case, the interests of counsel would best be served by holding the depositions in New York, since the attorneys all practice here. In addition, plaintiff's counsel is a solo practitioner, making it more difficult for him to arrange his schedule to take depositions abroad.

Next, the residence of the witnesses to be deposed is a significant consideration. Defendants' counsel initially represented that Khashoggi resides in Saudi Arabia and that the other Khashoggi Relatives live in Europe or other foreign countries. Mancino Aff. (12/16/88) at para. 4. Yet these statements do not specify the place of residence of the Khashoggi Relatives, nor are they supported by affidavits of the defendants. *See de Dalmady v. Price Waterhouse & Co.,* 62 F.R.D. 157, 159 (D.P.R. 1973) ("Well prepared and complete affidavits [by the party] are necessary to corroborate and give substance to his attorneys' assertions."). Indeed, considerable doubt has been cast on the accuracy of these representations. Since filing his affidavit, defendants' counsel has acknowledged that Khalid Khashoggi resides in New Jersey and has agreed to produce him for deposition in New York. In addition, plaintiff's counsel has submitted an article from *US Magazine* including a picture of Nabila Khashoggi at her California residence and quoting her as referring to another residence in New York.[2] Attachment to Weiss Aff. (1/13/89).

Finally, the Court must consider the extent to which each witness' affairs would be disrupted if that individual were required to travel to attend a deposition. Again, the defendants have failed to provide affidavits demonstrating in any detail how their businesses or other interests might be harmed if they were to take the time to come to New York for deposition.

*See Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. at 97. Taken together, then, the elements of convenience tip slightly in favor of holding the defendants' depositions in New York.

## 3. Litigation Efficiency

A final factor relevant to designating the site for a deposition includes those elements affecting the efficiency of the litigation. For example, in some cases it is desirable to depose corporate officers at their place of business so that counsel have easy access to corporate documents. Here, the retrieval of documents is not an important consideration. Since the defendants purportedly reside in a variety of foreign countries, there is no single document repository, and relevant papers would have to be carried to each deposition.

A much more compelling factor here is the need for judicial supervision. Although a judge or magistrate could conceivably resolve discovery disputes at an overseas deposition by telephone, such a procedure is costly and unwieldy. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d at 1365; *Financial General Bankshares, Inc. v. Lance,* 80 F.R.D. at 23. In this case, the degree of acrimony over discovery issues indicates that the depositions are likely to generate further disagreement. Holding them in New York would accelerate the resolution of these disputes and minimize the risk that any deposition will be interrupted for a significant period. Thus, consideration of litigation efficiency, together with other pertinent factors, tips the balance in favor of conducting the defendants' depositions here.

## 4. Criminal Liability

There is one additional consideration in this case that should be addressed. Adnan Khashoggi is under indictment in this district, and a warrant has been issued for his arrest. *United States v. Marcos,* sss 87 Cr. 598 (JFK) (S.D.N.Y.). It would be inappropriate for this Court to act as prosecutor and order him to be deposed here as a means of apprehending him. *See Farquhar v. Shelden,* 116 F.R.D. at 73 n. 5. By

---

**2.** This would not normally be very compelling evidence. However, since the defendants have

themselves produced no evidence of their residence, it need not be disregarded altogether.

the same token, it would be anomalous if the indictment were to give Khashoggi an advantage in this civil litigation by being considered as a factor making it "inconvenient" for him to appear here for deposition. Accordingly, Khashoggi's criminal difficulties have not been taken into account in connection with the instant motions.

## C. *Scheduling of Depositions*

■ The threshold issue regarding the scheduling of depositions is whether Mill-Run forfeited its right to litigate this action when its president failed to appear for deposition. The refusal of plaintiff's counsel to produce Issam Sawaya was plainly unwarranted. This action was based on the desire not to give the defendants a tactical advantage by permitting plaintiff's president to be deposed while the defendants' depositions were delayed pending resolution of their motion.

But, having made their motion for a protective order, the defendants were entitled to decline to proceed with their depositions. The unilateral decision by Mill-Run to halt discovery in retaliation was therefore improper. *See Yannitelli v. Navieras de Puerto Rico*, 103 F.R.D. 413, 416 n. 5 (S.D. N.Y.1984); *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984). Mill-Run's own motion for a protective order was not filed until after Sawaya's deposition had been aborted, and, in any event, interposing a meritless motion does not immunize the failure to produce a deposition witness. *See Yannitelli v. Navieras de Puerto Rico*, 103 F.R.D. at 416 n. 5. Here, the plaintiff's motion is without substance since the desire for a tactical advantage is hardly a basis for seeking court intervention in the scheduling of depositions.

■ Sanctions, including the striking of pleadings, may be imposed where discovery obligations are ignored, even if no court order has been violated. *See Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir.1979). Moreover, the sins of the attorney may be visited upon his client, and sanctions threatening the vitality of a lawsuit, including preclusion or dismissal, may be imposed even for transgressions entirely attributable to counsel. *See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067–68 (2d Cir.1979).

■ However, the court's choice among available sanctions should be informed by the degree of culpability of the offending party. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984). Thus, the Second Circuit Court of Appeals has held that the drastic penalty of dismissal should be imposed only where violation of discovery obligations is due to "willfulness, bad faith, or any fault" of the offending party. *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958)).

Fault, of course, "is a broad and amorphous concept." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d at 1067. Certainly, plaintiff's counsel is "at fault" here in the sense that he improperly declined to produce his client for a scheduled deposition. But a number of mitigating factors counsel against dismissing the complaint on this basis. First, the deposition has only been delayed, not precluded: plaintiff's counsel has repeatedly expressed a willingness to proceed according to a schedule established by the Court. Second, plaintiff's counsel did make some unsuccessful attempts to obtain court intervention prior to the scheduled date for the deposition. Third, the mistaken reliance by plaintiff's counsel on the principle of "priority" in discovery appears to stem more from inexperience in federal practice than from any calculated effort to obstruct discovery. Finally, this single transgression by plaintiff's counsel has neither prejudiced the defendants nor substantially delayed discovery.

Thus, this case is markedly different from those cited by the defendants in which the complaint was dismissed as a sanction for violating discovery requirements. In *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d at 34–35, for example, dismissal of the complaint was approved in light of "the overall discovery history of the appellants—their failure to

answer interrogatories, to appear at scheduled depositions, to produce for inspection documents requested by defendants...." The plaintiff has not demonstrated such a cavalier attitude toward discovery here. Similarly, the circumstances justifying dismissal in *Weinstein v. Ehrenhaus*, 119 F.R.D. 355 (S.D.N.Y.1988), were far more extreme than in this case. There, the court described the basis for dismissal in the following terms:

> This plaintiff's conduct has been egregious throughout the litigation. He has failed to appear at three scheduled depositions, and has been evasive and uncooperative when he has attended. He has improperly attempted to circumvent this court's jurisdiction through a fraudulent lis pendens filing.

*Id.* at 358. Finally, in *Arthur v. Starrett City Associates*, 98 F.R.D. 500, 505 (E.D.N.Y.1983), a plaintiff did not merely fail to appear for her deposition: she could not be located by her attorney. The obvious prejudice to defendants of retaining the claims of an absent plaintiff is not present here.

■■■■ Though dismissal of the complaint is unwarranted in this case, the problem of identifying an appropriate sanction remains. Where additional expenses are incurred because of discovery abuses, the court may require the responsible party to bear those costs. *See Argo Marine Systems, Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir.1985). But the additional costs incurred by the defendants here were minimal and could have been avoided. Counsel's preparation time for the deposition of Mill–Run generated no unnecessary costs because Sawaya will ultimately be deposed. Furthermore, the costs of creating a formal record of the aborted deposition need not have been incurred; defendants' counsel had repeatedly been advised that the witness would not be produced.

A better sanction is to ensure that plaintiffs' counsel does not obtain any unwarranted "priority" in discovery by virtue of the strategy employed here. Accordingly, the deposition of Issam Sawaya shall be taken within thirty days of the date of this order. Within sixty days of the completion of his deposition, each of the defendants whose depositions have been noticed shall appear in New York for examination, with reasonable travel and lodging expenses to be taxed as costs at the conclusion of the case. Each party shall bear its own costs for the discovery motions now decided.

SO ORDERED.