**Linda D. CRAWFORD, Plaintiff,**

v.

**FRANKLIN CREDIT MANAGEMENT CORPORATION, et al, Defendants.**

**No. 08 Civ. 6293(JFK)(FM).**

United States District Court, S.D. New York.

July 17, 2009.

Krishnan Shanker Chittur, Chittur & Associates, P.C., New York, NY, for plaintiff.

William M Rifkin, Belkin Burden Wenig & Goldman, LLP, New York, NY, for defendants.

## MEMORANDUM DECISION AND ORDER

FRANK MAAS, United States Magistrate Judge.

This action arises out of an unusual 2004 meeting at Kennedy Airport, during which plaintiff Linda Crawford ("Crawford"), hoping to save her home from imminent foreclosure, allegedly provided specimens of her signature on blank sheets of paper in connection with a proposed bridge loan transaction. She contends that Franklin Credit Management Corp. ("Franklin") and Tribeca Lending Corp. ("Tribeca") (together, the "Defendants") and their lending officer, Robert Koller ("Koller") instead fraudulently transposed her signature onto several mortgage-related documents. After a lengthy series of discovery disputes and delays, Crawford now moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Rule 37"), for an order striking the Defendants' answer and directing them to pay the attorneys' fees and expenses she allegedly incurred based upon their noncompliance with my discovery orders. In her reply papers, Crawford also contends that the Defendants have waived any claim of privilege as to the documents on their privilege log. For the reasons set forth below, Crawford's motion is granted in part and denied in part.

### I. *Relevant Facts*

On July 11, 2008, Crawford filed her original complaint, which was amended on July 25, 2008. (Docket Nos. 1, 2). After the Defendants filed their answer on September 26, 2008, (*see* Docket Nos. 3, 4), Judge Keenan set March 6, 2009, as the discovery cutoff date and referred the case to me for general pretrial supervision.[1] (Docket No. 6).

By mid-December, discovery was not proceeding smoothly. (*See* letter to the Court from Krishnan Chittur, Esq., dated Dec. 18, 2008). Accordingly, I held a discovery conference on January 9, 2009, during which counsel indicated that despite my instructions they had spent little time conferring about their disagreements. (*See* 1/9/09 Tr.

14–15). I therefore directed them to do so before our next conference. (*Id.* at 15).

When counsel showed no progress at the time of the February 2, 2009, conference before me, I required them to meet and confer immediately in my jury room in an effort to narrow their disputes. (2/2/09 Tr. 14, 16). Later that day, I finally was able to address their remaining differences. After narrowing the time period applicable to Crawford's requests to calendar years 2004 through 2006, I directed that the Defendants produce within two weeks: (a) all of their communications with various regulatory bodies; (b) documents sufficient to show the business relationships between and among the Defendants; (c) any incentive compensation plans applicable to persons involved directly or as supervisors in the Crawford loan; (d) year-end financial statements for Franklin; (e) a list of any actions commenced *against* the Defendants arising out of mortgage or refinancing agreements; and (f) a privilege log complying with Local Civil Rule 26.2. (*See* Docket No. 8). Because it appeared that the Defendants had been dragging their feet, I also directed them to produce one or more witnesses on February 26, 2009, to be deposed pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Rule 30(b)(6)") regarding the adequacy of their document search. (*Id.*)

On March 26, 2009, twenty days after the close of discovery, counsel again appeared before me to discuss further discovery disputes. During this conference, the Defendants' counsel, William M. Rifkin, Esq., conceded that he had served his document demand so late that he would, at most, have had two days to take depositions after Crawford's responses were due. (3/26/09 Tr. 2–3). Incredibly, Mr. Rifkin suggested that this was sufficient time for him to complete his discovery. (*Id.* at 3). The following exchange then took place;

> THE COURT: October 3rd, I set a March 6th discovery cutoff, correct?[2]
>
> MR. RIFKIN: Correct.

---

1. Judge Keenan's scheduling order does not appear to have been docketed.

2. In fact, as noted above, Judge Keenan had set the March 6th date.

THE COURT: What happened in October, November, December, and January in this case, nothing?

MR. RIFKIN: Nothing.

THE COURT: And the reason for that is—?

MR. RIFKIN: I—Your Honor, it's just—there are a lot of reasons, but it's really irrelevant ... as far as this Court is concerned.

(*Id.* at 4). Counsel previously had conceded that his firm had "around thirty attorneys," so it would appear that lack of staff was not the reason for the delay. (*See* 2/2/09 Tr. 5).

As of the March conference, the Defendants also had not provided Crawford with a privilege log. Mr. Rifkin represented that, "[a]s far as I remember, Your Honor, there's nothing that's been withheld on the ground of privilege," but offered to "double check." (3/26/09 Tr. 6). I then directed him to file an affidavit within one week representing that no documents created before the filing of the lawsuit had been withheld on privilege grounds, or, if they had, to provide a schedule of those documents, (*Id.*). The following week, the Defendants filed the affirmation of an in-house counsel at Franklin, who indicated that the Defendants had located additional documents that they believed had not previously been produced. The affirmation also conceded that certain documents had, in fact, been withheld on attorney-client privilege grounds. (Docket No. 16). As a consequence of this belated disclosure, Crawford first received the Defendants' privilege log more than two months after the deadline I had set during the January conference.

During the March conference, Crawford's counsel also complained that Mr. Rifkin had provided him with a list of cases commenced by the Defendants, rather than the list of suits brought against them as I had directed. In response, Mr. Rifkin represented that aside from a lawsuit brought in the Eastern District of New York, he did not "believe there [were] any others." (3/26/09 Tr. 17). The lawsuit to which he referred was one that Crawford's counsel previously had unearthed.

Mr. Rifkin further represented that the Defendants possessed no copies of any commission incentive plan applicable to their lending agents and that, with the exception of one unsigned writing, no documents existed that reflected the business relationships between and among the Defendants from 2004 through 2006. (*Id.* at 18, 21, 22). He also declared that there had been no disciplinary proceedings commenced against the Defendants in the states where they did business. (*Id.* at 23). When he was asked about license applications during the same period, Mr. Rifkin indicated that his clients had produced all the documents from their files that constituted license applications. (*Id.* at 24–25).

The affirmation that the Defendants filed after the March conference apparently contained a schedule of litigations pending against them. Unfortunately, the ECF filing by their counsel does not contain the exhibit identifying those suits. (*See* Docket No. 16).

The Defendants also eventually produced (nearly one month after the discovery cutoff) a copy of the compensation plan applicable to the agent who dealt with Crawford. (*See* Defs.' Sur–Reply Mem. 4 n. 7). The Defendants did not provide any explanation for their failure to produce this document earlier. (*Id.*).

Finally, during the March conference, Crawford's counsel complained that the Rule 30(b)(6) witness produced by the Defendants was inadequate. Rather than deciding this issue on the basis of counsel's representations (and a letter that he had submitted prior to the conference), I granted Crawford leave to make a formal motion seeking sanctions. (*See* Docket No. 12; letter to the Court from Mr. Chittur, dated Mar. 25, 2009, at 7–8; 3/26/09 Tr. 26–27). In that motion, which is now fully briefed, Crawford seeks to preclude the Defendants from presenting any evidence at trial and/or to strike the Defendants' answer, as well as payment of her attorneys' fees and expenses. (*See* Docket No. 13).

II. *Discussion*

Crawford's motion is governed by Rule 37. Two subsections of that Rule potentially are

relevant to Crawford's motion. The first is subsection (a), which relates to a motion for an order compelling disclosure of discovery. That subsection requires the Court to award attorneys' fees if the motion is granted, but not if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed.R.Civ.P. 37(a)(5)(A), (A)(i).

The second provision, which relates to a party's failure to comply with a prior court order, is subsection (b). That portion of the Rule provides that:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part
> . . . .

Fed.R.Civ.P. 37(b)(2)(A). Additionally, if the Court finds that a party has failed to comply with a discovery order, it *"must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney[s'] fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* (b)(2)(C) (emphasis added). Notably, under this subsection of the Rule, the movant has no obligation to confer with the opposing party in good faith before seeking relief.

A. *Crawford's Claims*

Crawford's motion focuses on the adequacy of the Defendants' Rule 30(b)(6) witness, responses to her document demands, and privilege log, each of which is addressed below. However, the papers submitted by Crawford's counsel in support of the motion, which largely are an amalgam of prior letters to the Court, fail to take adequate note of the important distinctions between subsections (a) and (b) of Rule 37. When Crawford's claims are analyzed in relation to the differing provisions, it becomes apparent that, notwithstanding defense counsel's astonishingly cavalier approach to discovery in this case, the relief to which Crawford is entitled is limited and does not include a preclusion order or the striking of the Defendants' answer.

1. *Rule 30(b)(6) Witness*

a. *Legal Standard Applicable to Corporate Deponents*

■ When a party seeks to depose a corporation, the "named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R.Civ.P. 30(b)(6). To satisfy the Rule, the designated organizational representative must be able to provide "complete, knowledgeable and binding answers." *Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya,* 248 F.R.D. 126, 152 (S.D.N.Y.2007). Nevertheless, "it is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party." *Rodriguez v. Pataki,* 293 F.Supp.2d 305, 311 (S.D.N.Y.2003).

■ The proper scope of the questioning of a Rule 30(b)(6) witness is not defined by the notice of deposition, but by Rule 26(b)(1) of the Federal Rules of Civil Procedure, unless a court otherwise directs. *Employers Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.,* No. CV 2005–620(JFB)(MDD), 2006 WL 1120632, at *1 (E.D.N.Y. Apr. 26, 2006) (Go, Mag. J.). "In fact, a notice of deposition ... constitutes the minimum, not the maximum, about which a deponent must be prepared to speak." *Id.* (quoting *Detoy v. City and County of San Francisco,* 196 F.R.D. 362, 366 (N.D.Ca. 2000)) (internal quotation marks and brackets omitted).

■ When an adverse party seeks sanctions after deposing a Rule 30(b) (6) witness,

courts treat the production of an unprepared witness as "tantamount to a failure to appear." *Kyoei Fire & Marine Ins. Co.*, 248 F.R.D. at 152 (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y.1997)). Even so, "for the court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Id.*

### b. *Olivera Deposition*

My February 2, 2009, order directed the Defendants to produce one or more witnesses to be deposed pursuant to Rule 30(b)(6) "regarding the adequacy of the document search conducted by the defendants." (Docket No. 8). Crawford's notice of deposition went well beyond this subject, however, stating that the Defendants' designee also should be prepared to provide information as to (i) the "corporate relationship, organization, control, management, and/or operations" of the Defendants; (ii) the subject matter of the action and each assertion contained in the pleadings; (iii) the Defendants' policies and practices regarding compliance with various "legal requirements" concerning mortgage financing; and (iv) the Defendants' "policies, practices, rules and action[s]" concerning discriminatory conduct by employees serving in a supervisory capacity. (Pl.'s Mem. Ex. 1). At no time did the Court ever order the Defendants to produce a corporate representative to testify with respect to the latter topics.

■ In response to Crawford's notice, the Defendants designated Melissa Olivera ("Olivera") as their corporate representative. (Defs.' Opp. at 4; Pl.'s Mem. Ex. 2 ("Olivera Dep.")). Crawford alleges that she is entitled to sanctions because Olivera was woefully unprepared. (*See* Pl.'s Mem. at 4–12). For their part, the Defendants argue that Olivera's testimony "clearly met—if not exceeded—" the legal standard. (Defs.' Opp at 4). A review of the deposition transcript confirms that Olivera was poorly prepared, which scarcely is a surprise given defense counsel's generally slipshod approach to this case. Nevertheless, in the one area as to which I had directed the Defendants to pro-

duce a witness, the gaps in Olivera's knowledge were not so "egregious" as to warrant sanctions. *Kyoei Fire & Marine Ins. Co.*, 248 F.R.D. at 152.

By way of example, Crawford first argues in her motion that Olivera was "totally unprepared to address the business relationship at issue" in this case, including the existence of agreements between and among the various lending companies. (Pl.'s Mem. at 4) (capitalization omitted). Olivera testified that there was in fact an agreement between Tribeca and Franklin in 2004, but that the only document reflecting that agreement was an unsigned "Loan Servicing Agreement" that had been produced in discovery. (Olivera Dep. at 89). Olivera further stated that the Defendants' in-house counsel had confirmed the existence of the agreement between the two entities, but told her that a signed document "was not available." (*Id.* at 90). When she was asked whether a signed copy existed, Olivera responded "I don't know." (*Id.* at 89).

When I pursued this issue during the March conference, Mr. Rifkin represented that the Defendants had produced any documents that existed reflecting the relationship among the defendant companies. (3/26/09 Tr. 21–22). Assuming the accuracy of this representation, Olivera obviously could not have provided further information about documents that do not exist.

Crawford similarly alleges that Olivera was insufficiently prepared to address the Defendants' loan closing practices and procedures. (Pl.'s Mem. at 5). Indeed, Olivera repeatedly admitted ignorance as to this topic and explained that she had no lending experience. (*See, e.g.,* Olivera Dep. at 19–20, 35, 47). Nevertheless, Olivera did testify that, "[f]rom my understanding, once a loan is closed all documentation that was involved within the closing, all applications, everything is kept together within the collateral file," including any faxes or other correspondence. (*Id.* at 18, 21–22). She also indicated that the Defendants' loan departments "were required to retain all documentation," a policy that was enforced by upper management. (*Id.* at 22, 25). Finally, Olivera explained that she had contacted the Defendants' "doc-

ument management group" to request the original collateral file and had printed out all available electronic documents. (*Id.* at 39).

This pattern is repeated throughout Olivera's deposition. When she was asked about the Defendants' document search (the only area in which her testimony was the subject of a court order), Olivera typically was able to answer fully the question she was asked. With respect to other areas of inquiry, however, Olivera often professed total ignorance. In some instances, this was due to the Defendants' corporate lack of knowledge, which cannot be the basis for sanctions assuming they made a diligent effort to locate the missing information.

In other instances, Olivera clearly was not an adequate Rule 30(b)(6) representative of the Defendants. For example, she knew virtually nothing about the Defendants' lending practices. Although the Defendants apparently ceased lending money in 2007 and Koller is no longer in their employ, (*see id.* at 28–29, 120–21), it defies credulity to suggest that there was nobody more capable of answering questions on behalf of the Defendants in this area. For this reason, it is understandable that Crawford was dissatisfied with the Rule 30(b)(6) witness professed by the Defendants. However, there is no suggestion that Crawford's counsel ever attempted in good faith to seek additional Rule 30(b)(6) testimony. In the absence of such a request, Crawford is not entitled to an award of attorneys' fees under Rule 37(a). Moreover, because the failure to provide an adequate witness with respect to such subjects was not a violation of my prior order, Crawford is not entitled to any relief under Rule 37(b), despite the numerous alleged gaps in Olivera's testimony cited in her motion papers.

### 2. *Document Requests*

Crawford next contends that the Defendants continuously failed to produce documents that were the subject of prior discovery orders. In particular, Crawford argues that she never has received: (a) any documents reflecting the Defendants' business relationships; (b) the compensation plan specifically applicable to Koller during the period

from 2004 through 2006; (c) information about legal proceedings commenced against the Defendants arising out of mortgages or mortgage refinancings; (d) copies of the Defendants' licenses and license applications, and information regarding disciplinary proceedings related to those licenses; (e) and a privilege log. (Pl.'s Mem. at 1–2). During the February conference, I had ordered the Defendants to produce these materials by February 17, 2009, and I again addressed this issue during the March conference after the Defendants failed to comply. (*See* Docket No. 8; 3/26/09 Tr. 4).

■ Turning first to the Defendants' business relationships, both Mr. Rifkin and Olivera have represented that the only responsive document in the Defendants' files is an unsigned agreement. (*See* 3/26/09 Tr. 21–22; Olivera Dep. at 89, 90). Crawford's skepticism that a company doing "a billion dollars' worth ... of underwriting," (3/26/09 Tr. 21), would not have further documentation is understandable, but she has not shown through Olivera's testimony or otherwise that the Defendants have misrepresented the true state of affairs or failed to produce a responsive document that was in their possession, custody or control. Absent such proof, the Court cannot grant relief under Rule 37(b) based on mere supposition that its order has been violated.

Crawford also complains about the lack of documents relating to Roller's compensation. (Affirm, of Mr. Chittur, dated April 3, 3009, ¶ 3(*l*)(ii)). During the February conference, I had ordered the Defendants to produce "any compensation plan that was in effect for the individual who negotiated the financing with the plaintiff ... in the period from 2004 to 2006." (2/2/09 Tr. 25). At the March conference, Mr. Rifkin stated that his clients could not locate the compensation plan, but that he would ask them to look again and provide an affidavit describing their search. (3/26/09 Tr. 18). The Defendants now argue in their opposition papers that they in fact have produced the compensation plan applicable to Koller as well as an affidavit describing the search as part of a fifty-eight-page fax sent to Crawford's counsel on April 3, 2009. (Defs.' Opp. at 3; Defs.' Sur–Reply at

4 n. 7). Whether such a fax actually was sent and received is itself a disputed issue in this case. Crawford's counsel contends that his office "never received any such document [in its entirety], whether by email, fax, or by hand," having instead received only the cover sheet and two additional pages. (*See* letter to the Court from Mr. Chittur, dated May 13, 2009, ¶¶ 2, 3; Affirm, of Andrey Strutinskiy, Esq., dated May 20, 2009 ("Strutinskiy Affirm."), ¶¶ 2–5). For his part, Mr. Rifkin has provided the Court with a fax confirmation sheet reflecting a successful fifty-eight-page transmission. (*See* letter to the Court from Mr. Rifkin, dated May 20, 2009). However, one of Crawford's attorneys has submitted an affirmation indicating that he requested that the materials be "sent or delivered" because they had not been received, and that "Mr. Rifkin agreed," but that as of May 20, 2009, they had yet to be received. (*See* Strutinskiy Affirm. ¶¶ 4–5).

Tellingly, Mr. Rifkin has not denied that this conversation occurred, nor has he shown that the remainder of his fax ever was resent to Crawford's counsel as had been requested. In his affirmation opposing Crawford's motion, Mr. Rifkin argues that he complied with the Court order regarding a compensation plan because it was produced as part of his April 3 fax. What he overlooks, however, is the fact that I had directed during the February conference that the responsive documentation be produced by February 17. (2/2/09 Tr. 25). Moreover, while a diligent search might not have led to the discovery of the relevant document within the period I directed, in their papers opposing Crawford's sanction motion, the Defendants have offered no reasons for their delay. Thus, the only possible conclusion for the Court to reach is that the delay in production was unjustified.[3]

Similarly, at the February conference I ordered the Defendants to produce information regarding any lawsuits commenced *against* them arising out of mortgages or mortgage refinancings from January 1, 2004 through July 11, 2008. (2/2/09 Tr. 28). At

the March conference, however, I learned that the Defendants inexplicably had produced a list of cases *brought* by the Defendants. (3/26/09 Tr. 16). When he was confronted with this discrepancy, Mr. Rifkin stated that he knew of only one case relevant to the Court's order, but would ask his clients again. (*Id.* at 17).

Thereafter, Mr. Rifkin apparently produced a supplemental list of cases on April 10, 2009, which Crawford contends is incomplete. (Pl.'s Reply at 7–9; Reply Affirm. of Mr. Strutinskiy, dated Apr. 24, 2009 ("Strutinskiy Reply Affirm."), ¶ 4(d)). The basis for Crawford's assertion is, in part, the fact that additional lawsuits are listed in certain license applications which apparently were turned over to her by the Defendants. Additionally, her attorneys' search of federal databases has revealed the existence of yet other proceedings against Franklin Tribeca, only some of which were disclosed by the Defendants. (*See* Strutinskiy Reply Affirm. ¶ 5(b)-(c)). At least some of these cases appear to be relevant to Crawford's claims in this suit. (*Id.*). It thus appears that the Defendants also violated this aspect of my February discovery directives (assuming that they were served with process in those suits).

Crawford also complains that the Defendants failed to comply with my order to produce "licenses that were in effect from 2004 through 2006," "the applications for those licenses," and "any correspondence related to disciplinary proceedings regarding those licences." (2/2/09 Tr. 30–31). At the March conference, Mr. Rifkin represented that there were *no* disciplinary proceedings in any state where the Defendants did business during that period. (3/26/09 Tr. 23). With respect to the licenses and applications, Mr. Rifkin at first conceded that he had unilaterally limited the scope of the Defendants' search to New York (and possibly New Jersey), but then suggested that he might not have imposed this restriction. (*See id.* at 24) ("I believe it was done .... I will re-check."). Given Mr. Rifkin's level of uncertainty, I directed that he obtain an

---

3. I assume that the contents of the April 3 fax have by now been sent to Crawford. If, however, that is incorrect, Crawford's counsel is to

notify Mr. Rifkin of this fact (in writing), and Mr. Rifkin is to hand deliver the missing pages to counsel within two business days.

affidavit indicating that the Defendants had searched for these documents, and if none were found, describing the scope of the search performed. (*Id.* at 25).

Mr. Rifkin now maintains that the Defendants "searched [their] records for all licenses and license applications—regardless of the time period—and produced everything [they] had in [their] possession." (Defs.' Sur–Reply at 2–3) (citing Affirm. of Joshua Jordon, sworn to on April 3, 2009 ("Jordon Affirm." or "Jordon Affirmation") (Docket No. 16)). Crawford's counsel contends, however, that the list of all current licenses, registrations, and applications was not in fact attached to the Jordon Affirmation. (Pl.'s Reply at 10). Indeed, the Jordon Affirmation appears to have been electronically filed without two of the three attachments cited in the sworn text. (*See* Docket No. 16). Assuming that the copy of the Jordon Affirmation Crawford received had a similar defect, one would think that counsel would have requested a corrected copy. There is no indication, however, that this was done.

### 3. *Privilege Log*

In addition to her other complaints, Crawford contends that the Defendants failed to comply with my order to produce a privilege log. (Pl.'s Mem. at 2; Reply at 11).[4] At the February conference, I directed the Defendants to "produce a privilege log that complies with the local rule ... for any documents withheld on privilege grounds." (*See* 2/2/09 Tr. 31–32; Docket No. 8). At the March conference, I then discussed with Mr. Rifkin why he had not produced such a log:

> THE COURT: [H]ave any documents responsive to any of [Crawford's] requests, except to the extent that I indicated you don't have to respond, been withheld on privilege grounds?
>
> MR. RIFKIN: No, I don't believe so, Your Hono

4. Although Crawford arguably first raised this issue fully only in her Reply, I allowed the Defendants to file a Sur–Reply. Despite that leave, however, the Defendants chose not to address the privilege log deficiencies when they were afforded the opportunity. There consequently is no procedural bar to entertaining this aspect of

> THE COURT: You don't believe so is ... different than no.
>
> MR. RIFKIN: As far as I remember, Your Honor, there's nothing that's been withheld on the ground of privilege .... I will double check, Your Honor, but I believe ... we gave everything. If there was anything that was withheld on the ground of privilege ... it would be attorney-client privilege. It may have been one or two of my e-mails from my client. I don't know, Your Honor.

(3/26/09 Tr. 5–6). In light of this response, I directed that within one week, Mr. Rifkin file an affidavit representing that no documents created before the filing of the suit had been so withheld, or, if they had, that he list them on a schedule. (*Id* at 6; Docket No. 12). The Jordon Affirmation included a privilege log (*see* Jordon Affirm. Ex. 1), but it is woefully deficient as a matter of law.

■ Under the Federal Rules of Civil Procedure, when a party withholds otherwise discoverable information by claiming privilege, the party must "expressly make the claim" and "describe the nature of the documents." Fed R. Civ. P. 26(b)(5)(A). This must be done in "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *Grand River Enters. v. King,* No. 02 Civ. 5068(JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan.12, 2009) (quoting *United States v. Constr. Prods. Research,* 73 F.3d 464, 473 (2d Cir.1996)). The local rules give force to these requirements by directing the party withholding a document to specify:

> (i) the type of document, e.g., letter or memorandum; (ii) the *general subject matter of the document;* (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document,

Crawford's complaints regarding the Defendants' discovery responses. *See Booking v. General Star Mgmt. Co.,* 254 F.3d 414, 418 (2d Cir.2001) ("[W]e doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs—especially when, as here, they order additional briefing.").

and, *where not apparent, the relationship of the author, addressees, and recipients to each other.*

S.D.N.Y. Civ. R. 26.2(a)(2) (emphasis added). The Defendants' log not only failed to identify the general subject matter of any of the listed documents, but also gave no indication how the seven non-lawyer participants in an email chain on February 17, 2005, were connected to the Defendants. (*See* Jordon Affirm. Ex. 1). It is well-settled that the "voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege." *Schanfield v. Sojitz Corp. of America,* No. 07 Civ. 9716(CM)(JCF), 2009 WL 577659, at *3 (S.D.N.Y. Mar. 6, 2009); *see also In re Horowitz.* 482 F.2d 72, 81 (2d Cir.1973). Moreover, the consequence of serving a deficient privilege log may be the waiver of a privilege claim. *Grand River,* 2009 WL 63461, at *4.

■ The attorney-client privilege of course lies at the heart of our system of jurisprudence. Nonetheless, it is clear that the Defendants should have served a privilege log at the time that they first responded to Crawford's document requests. Once the Defendants failed to do so, the Court gave Mr. Rifkin an opportunity to cure the defect after the February conference. Mr. Rifkin failed to grab that lifeline, however, choosing instead to represent inaccurately to the Court during the March conference that the Defendants had no privileged documents responsive to Crawford's requests. And even when it became apparent that this was untrue, Mr. Rifkin managed not to comply with the clear requirements of the local rule. While this course of conduct arguably would warrant requiring the disclosure of all of the documents on the privilege log, the Defendants' most egregious noncompliance relates to the email chain. Accordingly, the Defendants will be required to disclose that document to Crawford and to amend their privilege log within ten days to set forth the general subject matter of the remaining documents.

## B. *Sanctions*

Civil discovery depends upon the good faith of the parties. Indeed, because the courts would grind to a halt if it became necessary to intervene constantly in discovery disputes, counsel "should strive to be cooperative, practical and sensible, and should turn to the courts … only in extraordinary situations that implicate truly significant interests." *In re Methyl Tertiary Butyl Ether Products Liab. Litig.,* 415 F.Supp.2d 261, 280 n. 1 (S.D.N.Y.2005) (quoting *In re Convergent Techs. Sec. Litig.,* 108 F.R.D. 328, 331 (N.D.Cal.1985); *see also In re September 11th Liab. Ins. Coverage Cases,* 243 F.R.D. 114, 125 (S.D.N.Y.2007)) ("Discovery is run largely by attorneys, and the court and the judicial process depend upon honesty and fair dealing among attorneys."). This case is a poster child for how the system should not work. The Defendants and Mr. Rifkin essentially stonewalled Crawford for much of the discovery period. They also made baseless representations to the Court, such as their suggestion that no privileged documents were withheld.

Under Rule 37, the Court has "broad authority to impose sanctions" for such discovery misconduct. *Kyoei Fire & Marine Ins. Co.,* 248 F.R.D. at 143. Here, however, much of the relief sought by Crawford is inappropriate either because there has been no showing that the Defendants violated a court order, or because her counsel failed to attempt to resolve the problem with opposing counsel before seeking sanctions. Nevertheless, it is clear that the Defendants did fail to comply with my prior directives in important respects. Rule 37 therefore requires this Court to impose some appropriate sanction. An order precluding the Defendants from offering any evidence or striking the answer, which is the relief Crawford seeks, obviously would be an extreme sanction. *See Nieves v. City of New York,* 208 F.R.D. 531, 535 (S.D.N.Y.2002). While I would not hesitate to impose such a sanction in an appropriate case, the fault here seems to lie largely with the Defendants' counsel rather than with his clients. The sanctions sought by Crawford therefore strike me as overkill.

■ What sanction then is appropriate? If nothing else, it is clear that the March conference was convened to address issues that should have been resolved as a result of

the February conference, but for defense counsel's continuing (and wholly inexcusable) inattention to this case. In these circumstances, Crawford is entitled to the attorneys' fees reasonably related to the March conference, including the necessary preparation time. To the extent that Crawford seeks further sanctions, her request is denied.

### III. *Conclusion*

For the foregoing reasons, Crawford's motion to strike the Defendants' answer or preclude them from offering evidence at trial is DENIED and Crawford's motion for attorneys' fees is GRANTED to the extent that those fees reasonably were incurred in connection with the conference on March 26, 2009. Additionally, the Defendants shall immediately furnish Crawford with a copy of the email chain dated February 17, 2005, as to which their privilege has been waived. The Defendants also shall electronically file a corrected copy of the Jordon Affirmation containing the two missing exhibits. Finally, within ten days, the Defendants shall supplement their privilege log by including the general subject matter of the documents other than the email chain for which they claim privilege.

SO ORDERED.